United States District Court
Southern District of Texas
**ENTERED**
June 02, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE ADOLPHO CASTILLO, | § | |
| TDCJ #02019371, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-21-2281 |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| *Respondent.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Texas state inmate Jose Adolpho Castillo (TDCJ #02019371), filed a petition

and an amended petition for a writ of habeas corpus under 28 U.S.C. § 2254,

challenging his conviction for capital murder. (Dkts. 1, 10). The Court ordered the

respondent to answer the petition and amended petition. (Dkt. 7). The respondent

answered with a motion for summary judgment and filed extensive state-court

records. (Dkts. 17, 18). Castillo filed a response and, with leave of Court, a

supplemental response to the motion. (Dkts. 21, 23). Based on careful consideration

of the petition and amended petition, the motion and responses, the record, and the

applicable law, the Court concludes that Castillo has not stated meritorious grounds

for federal habeas relief. The Court therefore grants the respondent's motion for

summary judgment, denies Castillo's petition and amended petition, and, by separate

order, enters final judgment.  The reasons for the ruling are explained below.

## I.  **BACKGROUND**

### A.  **Procedural Background**

In August 2015, a jury in the 228th District Court for Harris County, Texas, found Castillo guilty of a single count of capital murder with a firearm in Cause Number 1301318.  (Dkt. 18-15, pp. 101-03).  Based on the jury's verdict, the court sentenced Castillo to life in prison without the possibility of parole.  (*Id.*).  The Fourteenth Court of Appeals affirmed Castillo's conviction and sentence.  *See Castillo v. State,* No. 14-15-00753-CR, 2016 WL 7177729, at *1 (Tex. App.—Houston [14th Dist.] Dec. 8, 2016, pet. ref'd) (mem op., not designated for publication).  The Texas Court of Criminal Appeals refused Castillo's petition for discretionary review.  *See Castillo v. State*, PD-1460-16 (Tex. Crim. App. Mar. 22, 2017) (Dkt. 18-20).

After his direct appeal was final, Castillo filed an application for a state writ of habeas corpus, raising twenty claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel.  (Dkt. 18-34, pp. 4-60).  The state habeas trial court entered findings of fact and conclusions of law addressing most of Castillo's claims.  (Dkt. 18-30, pp. 20-25).  The Court of Criminal Appeals denied the application without written order on findings of the trial court without a hearing and on the court's independent review of the record.  *See Ex parte Castillo*,

2

Writ No. 90,521-01 (Tex. Crim. App. Sept. 28, 2022). (Dkt. 18-33).

Castillo filed his original petition for federal habeas corpus relief on June 28, 2021. (Dkt. 1). The Court dismissed the petition without prejudice because Castillo had not yet exhausted his state remedies. (Dkts. 4, 5). Once the state habeas court issued its ruling on Castillo's state habeas application, Castillo filed a timely motion to reinstate his federal petition, (Dkt. 6), which this Court granted. (Dkt. 7). Castillo filed an amended petition, (Dkt. 10), in which he raises the same claims that were raised in both his state habeas application and his initial federal petition:

1. Trial counsel provided ineffective assistance by failing to move to disqualify a juror based on her close friendship with a law enforcement officer.

2. Trial counsel provided ineffective assistance by failing to move to disqualify a juror who said a witness's motive to lie would not contribute to a determination of the witness's credibility.

3. Trial counsel provided ineffective assistance by failing to file a proper motion in limine to exclude inadmissible evidence.

4. Trial counsel provided ineffective assistance by eliciting inadmissible hearsay from Detective Robert Blain.

5. Trial counsel provided ineffective assistance by failing to object when the State elicited inadmissible testimony from Victor Murillo about a conversation between Murillo, Castillo, and codefendant Edgar Padron (a/k/a Ricky) about a robbery Ricky wanted to commit.

6. Trial counsel provided ineffective assistance by failing to object when the State elicited inadmissible testimony from Murillo about a conversation he had with Castillo about the robbery

Ricky wanted to commit.

7.   Trial counsel provided ineffective assistance by failing to object when the State elicited inadmissible hearsay testimony from Murillo during his in-court identification of Ricky.

8.   Trial counsel provided ineffective assistance by eliciting inadmissible testimony from Murillo about a conversation he had with Castillo and Ricky.

9.   Trial counsel provided ineffective assistance by eliciting inadmissible testimony from Murillo about a telephone conversation he had with Castillo and Ricky about the number of people needed for the robbery.

10.   Trial counsel provided ineffective assistance by failing to object when the State elicited inadmissible testimony from Detective Jason Robles about whether Castillo was the person shown on video.

11.   Trial counsel provided ineffective assistance by failing to object and move for a mistrial when the trial court commented on the weight of Detective Robles's testimony.

12.   Trial counsel provided ineffective assistance by failing to object and move for mistrial when the State referred in closing arguments to the inadmissible evidence about the discussion between Castillo, Murillo, and Ricky about a robbery.

13.   Trial counsel provided ineffective assistance by failing to object and move for mistrial when the State referred in closing arguments to the inadmissible evidence about the telephone conversation between Castillo, Murillo, and Ricky.

14.   Trial counsel provided ineffective assistance by failing to object and move for mistrial when the State commented on the veracity of Castillo's wife during closing arguments.

15.   Trial counsel provided ineffective assistance by failing to object

and move for mistrial when the State vouched for the credibility of witness Ruben Ayala in closing arguments.

16. Trial counsel provided ineffective assistance by failing to object and move for mistrial when the prosecutor in closing argument expressed her personal opinion regarding the testimony of accomplice Mark Deleon.

17. Trial counsel provided ineffective assistance by failing to object and move for mistrial when the State commented on the veracity of the store clerk's testimony during closing arguments.

18. Trial counsel provided ineffective assistance by either requesting or failing to object to the inclusion of a jury instruction for the offense of aggravated robbery.

19. Trial counsel provided ineffective assistance because he suffered from mental or psychological defects during trial.

20. Trial counsel provided ineffective assistance by failing to defend against the charges against Castillo.

21. Appellate counsel provided ineffective assistance by failing to raise prosecutorial misconduct on direct appeal.

(Dkts. 1, pp. 6-22; 10, pp. 6-21). Castillo asks the Court to vacate his convictions and sentences and order either his discharge or a new trial. (Dkt. 1, p. 7).

The respondent answered Castillo's petition with a motion for summary judgment, asserting that none of his claims have merit. (Dkt. 17). Castillo filed a timely response to the motion, (Dkt. 21), and, with leave of Court, a supplemental response. (Dkt. 23).

**B.     Factual Background**

The Fourteenth Court of Appeals summarized the facts presented at Castillo's

trial as follows:

> The evidence at trial showed three masked and armed men entered a
> convenience store.  The complainant was in the store and put his hands
> in the air but was shot by one of the masked men.  The three men
> returned to their truck where the driver was waiting.  The driver testified
> appellant said, "I shot that dude."  Corporal Jason Boughter arrived at
> the scene and found the complainant on the sidewalk in front of the
> store.  Boughter was wearing a body camera which videotaped his
> encounter with the complainant.  The complainant was transported to
> the hospital but died from the gunshot wound.

*Castillo v. State,* No. 14-15-00753-CR, 2016 WL 7177729, at *1 (Tex. App.—

Houston [14th Dist.] Dec. 8, 2016, pet. ref'd) (mem op., not designated for

publication).

To fully understand the issues raised by Castillo in his federal petition,

additional facts about the evidence presented at trial are necessary.  The testimony

at trial established that Castillo's wife and Victor Murillo's wife were sisters.  (Dkt.

18-5, p. 87-88).   One day in mid-December 2010, Murillo went to Castillo's

apartment to pick up his wife and child, who had been visiting with Castillo's wife.

(*Id.* at 90-91).  When Murillo arrived, he saw Castillo and Edgar "Ricky" Padron

speaking to a man he did not know who was driving a white pick-up truck.  (*Id.* at

91-92).  When Murillo walked up, Ricky was talking about robbing a bank.  (*Id.* at

93).  Ricky asked whether Murillo wanted to participate in the robbery.  (*Id.*).

Murillo said no, collected his wife and child, and left.  (*Id.* at 93-94).

About two weeks later, on December 31, 2010, Murillo received a call from Castillo, who asked whether Murillo was going to participate in the robbery Ricky was planning.  (*Id.* at 94-96).  In the background of the call, Murillo could hear Ricky say something to the effect of "needing more guys" for the robbery.  (*Id.* at 107-08).  Murillo, who was at work at the time, told Castillo that he was not going to participate, and he told Castillo that he should not participate either.  (*Id.* at 96).  Murillo then hung up and returned to work.  (*Id.*).

On December 31, 2010, Mark Deleon had possession of a white pick-up truck with red and grey markings on it.  (Dkt. 18-6, pp. 44-45, 47-48).  After spending part of the day drinking and using cocaine, he drove to Castillo's house to "hang out." (*Id.* at 55-59).  After hanging out for a short time, Deleon and Castillo got in the white pick-up truck and went to pick up Ricky and another man—later identified as Ariel Donamaria.  (*Id.* at 61-62).  The four men then drove to a trailer in southwest Houston, where Ricky and Donamaria got out of the truck and went inside.  (*Id.* at 65-69).  When they came back out, the plan was to drive back to Castillo's apartment.  (*Id.* at 71-72).

On the way back to the apartment, the three men convinced Deleon to stop at a convenience store.  (*Id.* at 74).  Deleon testified that he believed that the men were going to do a "beer run," meaning that they were going to run into the store and steal

7

beer. (*Id.* at 74-75, 78-79). They stopped at a convenience store, and Castillo, Ricky, and Donamaria got out of the truck wearing masks and gloves and carrying firearms. (*Id.* at 74). Deleon stayed in the truck. (*Id.* at 78). A short time later, Deleon heard a shot, the men came running out of the store, they got into the truck, and all four fled in the white pick-up truck. (*Id.* at 80-82). As they were driving away, Castillo told Deleon that he "shot the dude." (*Id.* at 83).

Surveillance video from inside the convenience store showed the three men robbing the store clerk and one of the men shooting a customer inside the store. Because the three men wore masks and gloves during the robbery and shooting, neither the clerk nor any of the witnesses could identify the perpetrators. (Dkt. 18-5, pp. 14-15). Police began their investigation by trying to locate the white pick-up truck. (*Id.* at 16-17). Later in the investigation, the police received CrimeStoppers tips that ultimately led to the arrests of Castillo, Ricky, Donamaria, and Deleon. (*Id.* at 17-18, 20-24).

## II.   **LEGAL STANDARDS**

### A.   **The Antiterrorism and Effective Death Penalty Act**

Castillo's petition for federal habeas corpus relief is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254; *see also Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Review under AEDPA is "highly deferential" to the state

court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).   To

merit relief under AEDPA, a petitioner may not simply point to legal error in the

state court's decision. *See White v. Woodall*, 572 U.S. 415, 419 (2014) (stating that

being "merely wrong" or in "clear error" will not suffice for federal relief under

AEDPA).   Instead, AEDPA requires inmates to "show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any

possibility for fair[-]minded disagreement." *Id.* at 419-20 (quoting *Harrington v.

Richter*, 562 U.S. 86, 103 (2011)).   "If this standard is difficult to meet, that is

because it was meant to be." *Richter*, 562 U.S. at 102.

Under AEDPA, federal habeas relief cannot be granted on claims that were

adjudicated on the merits by the state courts unless the state court's decision (1) "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" or (2) "was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8

(2002) (per curiam); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).  The first

provision applies to questions of law or mixed questions of law and fact, while the

second applies to questions of fact.

On questions of law or mixed questions of law and fact, this Court may grant

9

habeas relief only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *Richter,* 562 U.S. at 97-98. The "contrary to" clause applies "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Broadnax v. Lumpkin*, 987 F.3d 400, 406 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 859 (2022). The "unreasonable application" clause applies "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Bell,* 535 U.S. at 694; *Broadnax*, 987 F.3d at 406. Under this clause, to merit relief the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (cleaned up).

On questions of fact, this Court may grant habeas relief only if the state habeas court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the state[-]court proceeding." 28 U.S.C. § 2254(d)(2); *see also Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011). The findings of the state court are "presumed to be correct," and a petitioner seeking to rebut that presumption must do so with clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

### B.   Summary-Judgment Standard

The respondent answered Castillo's petition with a motion for summary judgment. In ordinary civil cases, a district court considering a motion for summary judgment must construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). And "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). But AEDPA modifies summary-judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010) (per curiam). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are 'presumed to be correct'—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith*, 311 F.3d at 668. Unless the habeas petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, they must be accepted as correct. *Id.*

11

**C.     Pro Se Pleadings**

Castillo is proceeding *pro se* in this habeas proceeding.   *Pro se* habeas

petitions are construed liberally and are not held to the same stringent and rigorous

standards as pleadings lawyers file. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972)

(per curiam).   Therefore, the Court will broadly and liberally interpret Castillo's

petition. *See Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).   But even under

a liberal construction, "*[p]ro se* litigants must properly plead sufficient facts that,

when liberally construed, state a plausible claim to relief, serve defendants, obey

discovery orders, present summary judgment evidence, file a notice of appeal, and

brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir.

2014) (footnotes omitted).

**III.   DISCUSSION**

**A.     Ineffective Assistance of Trial Counsel Claims**

Castillo's petition alleges twenty claims of ineffective assistance of trial

counsel, some of which are interrelated.   Claims of ineffective assistance of counsel

are governed by the two-prong test established in *Strickland v. Washington*, 466

U.S. 668 (1984). *Strickland* requires a habeas petitioner to show both that counsel's

performance was deficient and that the deficient performance prejudiced the

defense. *Id.* at 687.   "Unless a defendant makes both showings, it cannot be said

that the conviction . . . resulted from a breakdown in the adversary process that

12

renders the result unreliable." *Id.*

To establish the deficient-performance prong of *Strickland*, a habeas petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. To meet this standard, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. 100, 118-19 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied") (citation omitted). In addition, "because of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). "The Supreme Court has admonished courts

reviewing a state court's denial of habeas relief under AEDPA that they are required

not simply to give [the] attorney's [sic] the benefit of the doubt, . . . but to

affirmatively entertain the range of possible reasons [petitioner's] counsel may have

had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012)

(cleaned up) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)).   Therefore,

"[o]n habeas review, if there is any 'reasonable argument that counsel satisfied

*Strickland*'s deferential standard,' the state court's denial must be upheld."

*Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at

105).

In addition to showing deficient performance, the habeas petitioner alleging

ineffective assistance of counsel must also show that he was prejudiced by that

deficient performance. *See Strickland*, 466 U.S. at 687.   "This requires showing

that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

whose result is reliable." *Id.*  To demonstrate prejudice, a habeas petitioner "must

show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.   A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.*

at 694. "[T]he question is not whether a court can be certain counsel's performance

had no effect on the outcome or whether it is possible a reasonable doubt might

have been established if counsel acted differently." *Richter*, 562 U.S. at 111.

14

"Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 696). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

When ineffective assistance of counsel claims are raised in a federal habeas petition, they present mixed questions of law and fact that are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). AEDPA does not permit *de novo* review of counsel's conduct, *see Richter*, 562 U.S. at 101-02, and a federal court has "no authority to grant habeas corpus relief simply because [it] conclude[s], in [its] independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc)).

Instead, the "pivotal question" for this Court is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also Visciotti*, 537 U.S. at 27 (holding that the federal habeas scheme "authorizes federal-court intervention only when a state-court decision is objectively unreasonable"). Thus, this Court's review becomes "'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Rhoades*, 852 F.3d at 434; *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016) (per curiam) (explaining that federal

15

habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" because "counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and requiring that federal courts "afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013))); *see also Richter*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (cleaned up). "'If this standard is difficult to meet'—and it is— 'that is because it was meant to be.'" *Burt*, 571 U.S. at 20 (quoting *Richter*, 562 U.S. at 103).

In this case, the Court of Criminal Appeals denied each of Castillo's ineffective assistance of counsel claims without written order based on the findings of the state habeas trial court without a hearing and on the court's independent review of the record. (Dkts. 18-33). Therefore, this Court considers Castillo's claims of ineffective assistance under the "doubly deferential" standard. *See Richter*, 562 U.S. at 105.

## 1. Ineffective Assistance in Jury Selection (Claims 1 and 2)

In claims one and two, Castillo alleges that trial counsel Jimmy Ortiz provided ineffective assistance by failing to move to strike two jurors after they

16

gave responses during jury selection that indicated that they could not return a fair and impartial verdict. In claim one, Castillo alleges that Ortiz should have moved to strike Juror 67 after she indicated that her friendship with a law enforcement officer might influence her decisions. In claim two, Castillo alleges that Ortiz should have moved to strike Juror 42 after he indicated that he would not consider the fact that someone was an accomplice when determining credibility.

The state habeas trial court included this claim in its designation of the issues, (Dkt. 18-29, pp. 6-11), and Ortiz filed an affidavit responding to Castillo's allegations. (Docket Entry No. 18-30, pp. 13-16). In that affidavit, Ortiz testified that when questioned about her relationship with a law enforcement officer, Juror 67 responded, "I can't say that that would necessarily – that would not influence me." (Dkt. 18-3, p. 93). Ortiz, listening to the juror in the courtroom, did not believe this to be a statement that Juror 67 could not be impartial or would be biased. (Dkt. 18-30, p. 13). Ortiz testified that if he had understood this statement to mean that Juror 67 might be biased, he would have inquired further. (*Id.*).

Similarly, Ortiz stated that when he asked what types of things the jurors would consider in judging credibility, Juror 42 responded that he would consider "the manner in which they speak, you know, how their remembrance of the event was." (*Id.* at 14). When Ortiz asked whether motive would play a factor, Juror 42 responded, "Whether or not someone was an accomplice or something like that, I

17

don't think so, no." (Dkt. 18-2, p. 104).   Ortiz stated that he did not ask further

questions because he understood the juror to be saying that he would judge

credibility by the same standards regardless of whether the witness was an

accomplice.  (Dkt. 18-30, p. 14).

Based on Castillo's allegations, the State's answer, Ortiz's affidavit, and its

review of the trial proceedings, the state habeas trial court made the following

findings of fact:

> 11.  In his first and second grounds for relief, the applicant claims trial
> counsel was ineffective for failing to disqualify jurors for bias.  *See Writ
> Application*.  The Court finds, based on the trial record that the jurors
> the applicant complains of did not indicate they were bias[ed] or could
> not be fair. (IV R.R. 93; II R.R. 104).
>
> 12.  The Court finds, based on the credible affidavit of Jimmy Ortiz,
> that Ortiz did not believe the jurors indicated bias and Ortiz did not
> believe jurors 67 and 42 should be disqualified.  *See Affidavit of Jimmy
> Ortiz*.  The Court finds that Ortiz' assessment was reasonable.

(Dkt. 18-30, p. 21).   The state habeas trial court applied the *Strickland* analysis to

these facts and concluded that Castillo had failed to show either that Ortiz's

performance was deficient or that Castillo had been prejudiced by any alleged

deficiency.  (*Id.* at 23).   The Court of Criminal Appeals denied relief based on these

findings along with its independent review of the record. (Dkt. 18-33).

In his federal petition and response to the motion for summary judgment,

Castillo asserts that Juror 67's response should be interpreted to mean that her

18

opinions and decisions would be influenced by her friendship with a law enforcement officer. (Dkts. 1, p. 8; 21, p. 5). Castillo asserts that Juror 42's response should be interpreted to mean that he believed that a witness's position as an accomplice should not play a role in determining that witness's credibility. (Dkts. 1, p. 8; 21, p. 5-6). He suggests that this Court should substitute his interpretation of the jurors' responses for those made by Ortiz during jury selection and should reject the state habeas court's conclusion that Ortiz did not provide ineffective assistance.

However, at most, Castillo's arguments show that there are two plausible interpretations of the jurors' responses. Juror 67 interrupted herself while answering the question, resulting in a response that, while ambiguous on paper, may have been clear to those present in the courtroom. And Juror 42's response could be understood to mean that he would judge the testimony of an accomplice under the same standards as any other witness. While Castillo clearly disagrees with the state habeas court's interpretation of the jurors' statements and its resulting factual findings, "when there is ambiguity in the prospective juror's statements," the trial court is "entitled to resolve it in favor of the State." *White v. Wheeler*, 577 U.S. 73, 79 (2015) (quoting *Uttecht v. Brown*, 551 U.S. 1, 7 (2007)); *see also Wainwright v. Witt*, 469 U.S. 412, 434 (1985) ("[W]hatever ambiguity [the petitioner] may find in this record, we think that the trial court, aided as it undoubtedly was by its

assessment of [the prospective juror's] demeanor, was entitled to resolve it in favor of the State.").

Castillo points to no clear and convincing evidence that the state habeas court's interpretation of these ambiguous answers was unreasonable. And even if this Court were to conclude that Castillo's interpretation of the juror responses was "better," Castillo would not be entitled to relief because "fair-minded jurists could disagree" as to which interpretation was proper and whether the state habeas court's decision based on these ambiguous statements was objectively reasonable. *See Thomas v. Lumpkin*, 995 F.3d 432, 446 (5th Cir. 2021), *cert. denied,* 143 S. Ct. 4 (2022); *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995) ("Even an ambiguous record entitles the state court findings to this presumption of correctness.").

More importantly, the question for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. The record shows that the state habeas court considered Castillo's arguments, made credibility determinations based on the evidence and its review of the trial proceedings, applied the *Strickland* analysis to the facts it found credible, and concluded that Castillo had failed to demonstrate either deficient performance or actual prejudice as a result of Ortiz's decisions during jury selection. Castillo has not shown that the state habeas court's application of the *Strickland* standard

20

was objectively unreasonable. Because the state habeas court's decision was neither contrary to clearly established federal law nor an objectively unreasonable application of that law, Castillo is not entitled to federal habeas relief on these claims.

### 2. Failure to File a Motion in Limine (Claim 3)

In claim three, Castillo alleges that Ortiz provided ineffective assistance by failing to file a pretrial motion in limine to preclude the State from presenting inadmissible evidence. (Dkt. 10, p. 7). He does not identify any specific evidence that he wished to have excluded other than to say that Ortiz should have requested a hearing outside the presence of the jury to challenge "the inadmissible evidence complained about in this Petition." (*Id.*). Castillo alleges that he was prejudiced by Ortiz's failure to file a motion in limine because "the State had no direct evidence to support the accomplice witness testimony besides all of the inadmissible testimony complained of in this Petition." (*Id.* at 7-8).

Ortiz responded to this claim in his affidavit, testifying as follows:

In his third ground for relief the applicant claims that counsel was ineffective for failing to file a motion on limine to keep out all inadmissible testimony. Counsel filed a comprehensive Discovery Order with the Court prior to trial (on October 9, 2013). Counsel did not file a motion in limine nor believe it was necessary since objections could be made during trial if Counsel felt the State was introducing inadmissible evidence that Counsel didn't believe played into the case theory or assisted in attacking State's other evidence.

21

(Dkt. 18-30, p. 14).   Based on Castillo's petition, the State's answer, Ortiz's affidavit, and its review of the trial record, the state habeas trial court made the following findings:

> 13. In his third ground for relief the applicant claims that counsel was ineffective for failing to file a motion in limine to keep out all inadmissible testimony. *See Writ Application.*

> 14. The Court finds, based on the credible affidavit of Ortiz, that Ortiz decided not to file a motion in limine covering "all inadmissible testimony" but rather, intended to object during the trial to any testimony he believed was inadmissible. *See Affidavit of Jimmy Ortiz.*

> 15. The Court finds that Ortiz decision to object during the trial rather than filing a preemptive motion in limine is reasonable trial strategy.

(*Id.* at 21).  The state habeas trial court applied the *Strickland* analysis to these facts and concluded that Castillo had failed to show either that Ortiz's performance was deficient or that Castillo had been prejudiced by any alleged deficiency.  (*Id.* at 23). The Court of Criminal Appeals denied relief based on these findings and its own independent review of the record.  (Dkt. 18-33).

The trial record supports the state habeas court's finding that Ortiz's failure to file a motion in limine was neither deficient performance nor prejudicial.   In Texas, a motion in limine is a procedural device designed to assist in the administration of trial.

> It is, in practice, a method of raising objection to an area of inquiry prior to the matter reaching the ears of the jury through a posed question, jury

22

> argument, or other means.  As such, it is wider in scope than the
> sustaining of an objection made after the objectionable matter has been
> expressed.  However, it is also, by its nature, subject to reconsideration
> by the court throughout the course of the trial.  This is because it may
> not be enforced to exclude properly admissible evidence.

*Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975).  A ruling on a

motion in limine is a conditional pretrial order, and the violation of a limine order

is not, in and of itself, a means to exclude evidence.  *Id.*  Instead, if a party violates

a limine order, the opposing party must still object to the admission or exclusion of

the evidence and raise proper grounds for the objection to preserve any alleged error

for appeal.  *See Harrington v. State*, 547 S.W.2d 616, 620 (Tex. Crim. App. 1977).

The state habeas court found that Ortiz did not file a motion in limine as a

matter of trial strategy, preferring instead to object if the State began to elicit any

inadmissible evidence.[1]   Ortiz did not waive any objections to any allegedly

inadmissible evidence by failing to file a motion in limine, and this Court's review

of the trial record does not show that Ortiz's strategy of waiting to object until the

State attempted to elicit inadmissible evidence was so ill chosen as to permeate the

entire trial with obvious unfairness.

In his response to the motion for summary judgment, Castillo simply restates

---

[1]Ortiz did make an oral motion in limine after jury selection and before opening
statements, seeking to exclude any evidence of Castillo's two other pending criminal
charges and any evidence of gang membership. (Dkt. 18-4, p. 9).  This motion was granted
without objection.  (*Id.*).

his initial arguments and disagrees with the state habeas court's determinations. But the record shows that the state habeas court considered Castillo's arguments, made credibility determinations based on the evidence and its review of the trial proceedings, applied the *Strickland* analysis to the facts it found credible, and concluded that Castillo had failed to demonstrate either deficient performance or actual prejudice because of Ortiz's decision not to file a pretrial motion in limine. Castillo has not directed this Court to any clear and convincing evidence sufficient to rebut the presumption that the state habeas court's findings are correct, nor has he shown that the state habeas court's application of *Strickland* to the facts was objectively unreasonable. Castillo has therefore failed to carry his burden of proof, and he is not entitled to federal habeas relief this claim.

### 3.     Ineffective Assistance by Eliciting Inadmissible Hearsay (Claim 4)

In claim four, Castillo alleges that Ortiz provided ineffective assistance by eliciting testimony from Detective Robert Blain that codefendant Edgar "Ricky" Padron identified Castillo as one of the men involved in the robbery and shooting. (Dkt. 10, p. 7). Castillo alleges that the State had no direct evidence that he was one of the men involved in the robbery and that eliciting this hearsay from Detective Blain provided direct evidence of Castillo's involvement. (*Id.* at 9). Castillo alleges that he was prejudiced because without Detective Blain's testimony, the result of

24

the trial would have been different because there would have been insufficient evidence to support a conviction. (*Id.*).

Ortiz responded to this claim in his affidavit as follows:

> In his fourth ground for relief the applicant claims counsel was ineffective for eliciting hearsay testimony from detective Blain that co-defendant "Ricky" identified the applicant as one of the persons who committed the robbery. The strategy at trial was to show that "Ricky" and other witnesses (Victor Murillo and Mark Deleon) were lying about the applicant's involvement in the robbery. Counsel believed it was beneficial to cross-examine detective Blain about co-defendant "Ricky's" identification of the applicant as one of the persons who committed the robbery in order to put applicant's assertion forward that "Ricky" and other witnesses (Mark Deleon and Victor Murillo) were lying against him. . . . Per "Ricky's" statement, Victor Murillo was also involved, but police later determine he was not and was rather a witness. Counsel felt it was beneficial in mentioning "Ricky's" identification of co-accomplices in order to show he was not being truthful.

(Dkt. 18-30, p. 14). After reviewing Castillo's petition, the State's answer, Ortiz's affidavit, and the record of the trial proceedings, the state habeas trial court made the following findings concerning this claim:

> 16. In his fourth ground of relief the applicant claims counsel was ineffective for eliciting hearsay from detective Blain that "Ricky" identified the applicant as one of the persons who committed the robbery. *See Writ Application.*
>
> 17. The Court finds, based on the credible affidavit of Ortiz, that it was part of Ortiz's trial strategy to show that "Ricky" and other witnesses (Victor Murillo and Mark Deleon) were lying about the applicant's involvement in the robbery and therefore detective Blain's testimony about "Ricky" identifying the applicant was relevant to his defense. *See Affidavit of Jimmy Ortiz.*

25

> 18. The Court finds that counsel's actions at trial regarding detective Blain's testimony were played out as part of his trial strategy and that those actions were not objectively unreasonable.

(*Id.* at 21-22). The state habeas trial court applied the *Strickland* analysis to these facts and concluded that Castillo had failed to show either that Ortiz's performance was deficient or that Castillo had been prejudiced by any alleged deficiency. (*Id.* at 23). The Court of Criminal Appeals denied relief based on these findings and its own independent review of the record. (Dkt. 18-33).

The trial record supports the state habeas court's findings concerning Detective Blain's testimony. Detective Blain testified that much of the information that eventually linked Castillo, Ricky, and Donamaria to the robbery and shooting came through CrimeStoppers tips. (Dkt. 18-5, pp. 56-58). These tips led first to Ricky's arrest. (*Id.* at 60-61). When Detective Blain interviewed Ricky, he denied being involved in the robbery and shooting, but he provided the names of multiple possible suspects. (*Id.*). This list included Castillo, Donamaria, Murillo, and someone called "Gordo." (*Id.* at 64). Detective Blain later determined that neither Murillo nor "Gordo" were involved in the robbery or shooting. (*Id.* at 61-64). Detective Blain testified that it was "very common" for people suspected of murder "to try and pin the blame on somebody besides themselves." (*Id.* at 68). Ortiz used this testimony to argue that Ricky was lying about Castillo's involvement in the

robbery, just as he had lied about the involvement of Murillo and "Gordo."

The trial record also supports the state habeas court's finding that Castillo was not prejudiced by Detective Blain's testimony. Mark Deleon, the accomplice who drove the white pick-up truck used in the robbery, testified that on the day of the robbery, he picked up Castillo, Ricky, and Donamaria and drove them to the southwest side of Houston. (Dkt. 18-6, pp. 61-63, 74). While returning to Houston, they stopped at a convenience store. (*Id.* at 74). Deleon stayed in the truck and the other three went inside, wearing masks and gloves and carrying firearms. (*Id.* at 74-75, 77, 86-87). Minutes later, Deleon heard a gunshot and then the three men came running back toward the truck. (*Id.* at 80-81). As they fled the scene, Castillo told Deleon, "I shot that dude." (*Id.* at 83).

Deleon's testimony placed Castillo at the convenience store, holding a firearm and participating in the robbery and the shooting. His testimony refutes Castillo's contention that Detective Blain's allegedly inadmissible testimony was the "cornerstone" of the State's case. In addition, Castillo cannot show that there is a reasonable probability that, but for Ortiz's alleged error in eliciting Detective Blain's testimony about Ricky's identification of Castillo, the result of the proceeding would have been different. Instead, the jury could easily have relied solely on Deleon's testimony to reach its verdict.

The state habeas court considered Castillo's arguments, made credibility

27

determinations based on the evidence and its review of the trial proceedings, applied the *Strickland* analysis to the facts it found credible, and concluded that Castillo had failed to demonstrate either deficient performance or actual prejudice as a result of Ortiz's questioning of Detective Blain.  Castillo has not pointed to any clear and convincing evidence to show that the state habeas court's factual findings were unreasonable in light of the evidence presented at trial, nor has he shown that the state habeas court's application of *Strickland* to the facts was objectively unreasonable.  Castillo has not carried his burden of proof and is not entitled to federal habeas relief on this claim.

### 4.    Ineffective Assistance in Testimony from Murillo (Claims 5, 6, 7, 8, 9)

In claims five through nine, Castillo alleges that Ortiz provided ineffective assistance by failing to object when the State elicited allegedly inadmissible testimony from Murillo about certain events and conversations that occurred leading up to the robbery and shooting.  In these claims, Castillo alleges that Ortiz should have objected when the State elicited testimony from Murillo about a discussion between Murillo, Castillo, and Ricky about a robbery that Ricky wanted to commit. (Dkt. 10, pp. 9, 11-13).  He alleges that Ortiz should have objected when the State elicited testimony about a later telephone conversation between Castillo and Murillo about the earlier discussion with Ricky. (Dkt. 1, p. 10-11).  And he

alleges that Ortiz should have objected when the State elicited testimony from Murillo about another telephone conversation during which he allegedly heard Ricky say he needed more people to help commit the robbery. (Dkt. 10, pp. 12-13). Ortiz alleges that all of this testimony was inadmissible hearsay and that he was prejudiced because the testimony corroborated Deleon's testimony concerning his involvement in the robbery and shooting. (*Id.* at 10-13).

Ortiz responded to these claims in his affidavit as follows:

> In grounds 5-9 the applicant claims counsel was ineffective for failing to object and for eliciting testimony from Victor Murillo regarding a conversation between himself, the applicant and co-defendant, "Ricky" discussing a robbery and a subsequent phone conversation from the applicant about Murillo's participation in the robbery.
>
> First, the strategy at trial was to show that the applicant never agreed to participate in the robbery at the time of the initial discussion nor when the applicant called Murillo later to ask if he was going to "do the stuff." Murillo's testimony was necessary to develop this strategy and therefore counsel did not object to the State's questions regarding the initial conversation or the subsequent phone call. Additionally, counsel elicited more testimony from Murillo sufficient to make the defense argument that the applicant never agreed to participate in the robbery.

(Dkt. 18-30, pp. 14-15).

Based on Castillo's claims, Ortiz's affidavit testimony, and its review of the record, the state habeas trial court made the following findings:

> 19. In his fifth through ninth grounds for relief the applicant claims counsel was ineffective for failing to object and for eliciting testimony

from Victor Murillo regarding a conversation Murillo had with the applicant and the co-defendant "Ricky" discussing a robbery and subsequent phone conversation from the applicant about Murillo's participation in the robbery. *See Writ Application.*

20.   The Court finds, based on the credible affidavit of Ortiz, the applicant's defense was that he never agreed to participate in the robbery at the time of the discussion nor during the subsequent phone conversation. *See Affidavit of Jimmy Ortiz.* The Court finds that Murillo's testimony was necessary to develop the defense strategy and therefore, Ortiz's decision not to object to the testimony on direct and to elicit more testimony on the subject during cross-examination was strategic and reasonable.

(*Id.* at 22). The state habeas trial court applied the *Strickland* analysis to these facts and concluded that Castillo failed to show either that Ortiz's performance was deficient or that Castillo had been prejudiced by any alleged deficiency. (*Id.* at 23). The Court of Criminal Appeals denied relief based on these findings and its own independent review of the record. (Dkt. 18-33).

The trial record supports the state habeas court's finding that the challenged testimony furthered Ortiz's trial strategy to show that Ricky was lying about Castillo being involved.   While Murillo testified to being present on several occasions when Ricky was talking about a robbery, he did not testify that Castillo actively participated in the planning, nor did he testify that he ever heard Castillo agree to participate in the robbery. (Dkt. 18-6, p. 106). Murillo testified that the police initially accused him of being the get-away driver based on Ricky's post-arrest statements, but Murillo was ultimately able to prove that he had been at work

at the time of the robbery.  (*Id.* at 103-04).

During closing arguments, Ortiz argued that the police never verified that Murillo received a phone call from Castillo on the day of the shooting, and they simply took his word for what was said during that alleged call. (Dkt. 18-7, p. 12). Ortiz also pointed out that Murillo never heard Castillo agree to participate in the robbery, and he did not identify him on the surveillance video.  (*Id.* at 12-13).  The thrust of the defense was that Castillo was not involved in the robbery and that Ricky, Murillo, and Deleon had strong motives to lie about Castillo's involvement. The testimony elicited by the State during Murillo's direct examination and by Ortiz on cross-examination, some of which was hearsay, supported Ortiz's theory of defense.

In his response to the motion for summary judgment, Castillo cites to several cases for the proposition that an attorney's decision not to object to prejudicial and inadmissible evidence can never have strategic value.  *See, e.g., Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985); *Vela v. Estelle*, 708 F.2d 954, 966 (5th Cir. 1983). But those cases do not sweep as broadly as Castillo believes.  The courts in those cases found that there was no conceivable strategic reason for failing to object to the evidence presented against the defendants *in those cases* based on the other available evidence and the theories of defense.  In this case, however, Ortiz specifically stated in his affidavit that the hearsay elicited by the State furthered his

31

theory of defense, and the record of the trial as a whole supports this statement. Castillo is not entitled to a ruling in his favor based on the cases he cites.

An examination of the record in this case supports the state habeas court's finding that Ortiz's handling of this testimony was part of a reasoned trial strategy. While Castillo takes issue with the state habeas court's credibility findings, he points to no clear and convincing evidence in the record sufficient to rebut the presumption of correctness afforded to the state habeas court's credibility determinations and findings of fact. The Court finds that the state habeas court properly applied the *Strickland* analysis to the facts it found credible, and its decision was neither contrary to clearly established federal law nor an objectively unreasonable application of that law. Castillo is not entitled to federal habeas relief on this claim.

### 5.   Ineffective Assistance During Testimony of Jason Robles (Claim 10)

In claim ten, Castillo alleges that Ortiz provided ineffective assistance by failing to object when the State elicited inadmissible testimony from Detective Jason Robles identifying Castillo as one of the perpetrators shown in the surveillance video. (Dkt. 10, p. 12). He alleges that this deficient performance prejudiced him by depriving him of a fair trial.

The trial record shows that on direct examination of Detective Robles, the

following occurred:

> Q.   (BY MS. JOHNSON)    Sergeant Robles, based on your investigation, do you believe you know who is who in this surveillance video?
>
> A. Yes.
>
> MR. ORTIZ: Judge, I'm going to object as to speculation and hearsay.
>
> THE COURT: Sustained until further information before me.
>
> * * * *
>
> Q. Based on your personal observations plus your entire investigation, were you able to figure out who was who in this video?
>
> MR. ORTIZ: Judge, I'm going to object, that's speculation.
>
> THE COURT: He can answer yes or no to this question.
>
> THE WITNESS: Yes.
>
> Q. (BY MS. JOHNSON)  Which one is Padron?
>
> MR. ORTIZ: Judge, I'm going to object.  That's speculation.
>
> THE COURT:  Sustained.  I'm not sure it's not invading the province of the jury, either.  I think they've heard the same information that you elicited from this witness.

(Dkt. 18-6, pp. 151, 154-55).  On cross-examination, the following occurred:

> Q. (BY MR. ORTIZ) Now, you told us on direct examination, the jury, that it appeared as though the mask came down on one of the suspects, I believe who you told us Mr. Castillo, correct?
>
> A. Came down or came up.

Q. Or was always in that position?

A. Correct, it's possible, yes.

Q. Now, with regards to State's Exhibit 10 that I have here, you're not telling the jury that you can tell from this photograph facial features for identification purposes that that is Mr. Castillo from these photographs?

A. Based solely on facial features, no.

(*Id.* at 164). Then, on re-direct, the following occurred:

Q. Now, Defense counsel asked you a moment ago about the robber in the surveillance video stills where we can see that his mask may be a little lower than the others, remember that?

A. Yes, ma'am.

Q. And he asked you are you saying that that robber is Mr. Castillo based on his facial features alone; is that correct?

A. Correct.

Q. And your answer to him was, no, I can't tell based on facial features?

A. Alone, correct.

Q. What did you mean by that?

A. I can personally -- I believe it's him, and I can tell from the totality of the investigation; but just based on his facial features, no, I could not.

Q. And based on the totality of your investigation, the robber in the video wearing the cap and shorts, who is that?

A. Donamaria.

MR. ORTIZ: Your Honor, I'm going to object to speculation.

34

MS. JOHNSON:  He opened the door, Your Honor.

THE COURT:  Not exactly.  I think you've already gotten more out of this than you probably should have.  But the objection is sustained.

MS. JOHNSON:  I'll pass the witness.

(*Id.* at 168-69; emphasis added).  Castillo contends that Ortiz's failure to object to Detective Robles's statement expressing his belief that Castillo was one of the individuals on the surveillance video constituted deficient performance that resulted in prejudice and denied him a fair trial.

In response to this claim, Ortiz stated the following in his affidavit:

> In his tenth ground for relief the applicant claims counsel was ineffective for failing to object to detective Robles testimony.  The applicant claims the testimony was inadmissible because detective Robles was speculating that the applicant was the person in the video.  However, on direct examination, when the State attempted to have Robles identify the applicant as the person in the video, counsel did object to speculation and that objection was sustained.  (VI R.R. 154-155).

> Furthermore, during cross-examination Robles agreed that he could not tell who was in the video based on facial features alone.  (VI R.R. 168).  Defense strategy centered on the theory that "Ricky" and the other witnesses were lying about the applicant's involvement therefore the focus was on the inconsistencies between what those witnesses told the police and their testimony.  Cross-examination intended to show that even the in-store video could not link the applicant to the crime.

(Dkt. 18-30, p. 15).  Having reviewed Castillo's claim, Ortiz's response, and the trial record, the state habeas court found as follows:

21. In his tenth ground for relief, the applicant claims that counsel was ineffective for failing to object to detective Robles' speculative testimony identifying the applicant in the video of the robbery. *See Writ Application.*

22. The Court finds the applicant is mistaken in his claims. On direct examination, when the State asked Robles about the identity of the person in the video Ortiz did object to speculation and that objection was sustained. (VI R.R. 154-155). Further, during cross-examination Robles agreed that he could not tell who was in the video based on facial features alone. (VI R.R. 168).

(*Id.* at 22). The state habeas trial court applied the *Strickland* analysis to these facts and concluded that Castillo had failed to show either that Ortiz's performance was deficient or that Castillo had been prejudiced by any alleged deficiency. (*Id.* at 23). The Court of Criminal Appeals denied relief based on these findings, as well as its independent review of the record. (Dkt. 18-33).

The state habeas trial court's findings of fact and conclusions of law do not address the portion of Detective Robles's testimony about which Castillo actually complains. Castillo does not allege that Ortiz failed to properly object during direct examination or that he elicited improper testimony on cross-examination. Instead, Castillo alleges that Ortiz failed to object to the identification testimony elicited on redirect examination. Neither Ortiz's affidavit nor the state habeas trial court's findings of fact address this comment.

However, under AEDPA, this Court considers the reasonableness of the "ultimate legal conclusion that the state court reached and not . . . whether the state

court considered and discussed every angle of the evidence." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002); *see also Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010) (quoting *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).  Therefore, this Court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102.

The state habeas court's ultimate legal decision on this claim was that Ortiz did not provide ineffective assistance during the questioning of Detective Robles. In reaching this decision, the state habeas court could reasonably have determined that Castillo was not prejudiced by Ortiz's failure to object to this single response when viewed in light of all of the evidence of guilt presented by the State.  Because Castillo does not point to clear and convincing evidence showing that it is "'reasonably likely' the result would have been different" had Ortiz made this single objection, *see Richter,* 562 U.S. at 111, he has not met his burden to show that the state habeas court's decision to deny relief was objectively unreasonable.  Castillo is not entitled to federal habeas relief on this claim.

### 6. Ineffective Assistance for Failing to Object to Court's Comments on the Weight of the Evidence (Claim 11)

In claim eleven, Castillo alleges that Ortiz provided ineffective assistance by

failing to object when the trial court commented on the weight of Detective Robles's testimony that Castillo was one of the persons shown in the surveillance video. (Dkt. 10, p. 13). Castillo alleges that while sustaining Ortiz's objection to the prosecutor's question as to whether Detective Robles could identify anyone on the surveillance video, the trial court ruled that the question "invades the province of the jury" and commented that the State had "already gotten more out of this than you probably should have." (*Id.* at 13-14). Castillo alleges that these statements indicated to the jury that the trial court found Detective Robles's testimony credible and prejudiced him because the comments diminished the credibility of his defense. (*Id.* at 14).

Ortiz responded to this claim in his affidavit as follows:

> In his eleventh ground for relief, the applicant claims that counsel was ineffective for failing to object to the trial court's commentary on the weight Robles' testimony. After sustaining counsel's objection, the court stated ". . . I think you've already gotten more out of this witness than you probably should have. . ." (VI R.R. 169). The court was not commenting on the weight of the evidence nor indicating or insinuating it was giving more credibility or weight to the testimony of detective Robles but was indicating to the attorneys that the court allowed some latitude in questioning.

(Dkt. 18-30, p. 15). After reviewing Castillo's claim, Ortiz's response, and the trial record, the state habeas trial court found the following:

> 23. In his eleventh ground for relief the applicant claims counsel was ineffective for failing to object to the trial court's commentary on the weight of detective Robles' testimony. *See Writ Application.*

> 24.  The Court finds that the applicant is incorrect. After sustaining counsel's speculation objection, the court stated ". . . I think you've already gotten more out of this than you probably should have. . ." (VI R.R. 169). The Court finds that this was not a comment on the weight or credibility of the evidence.

(*Id.* at 22). After applying the *Strickland* analysis to these facts, the state habeas trial court concluded that Castillo failed to show either that Ortiz's performance was deficient or that Castillo had been prejudiced. (*Id.* at 23). The Court of Criminal Appeals denied relief based on these findings and its independent review of the record. (Dkt. 18-33).

The trial record supports the state habeas court's finding that the trial court's comments were not improper. Under Texas law, a "trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case." *Dunn v State*, No. 14-12-00110-CR, 2013 WL 3770917, *2 (Tex. App.—Houston [14th Dist.] July 16, 2013, pet. ref'd) (citing *Simon v State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). The challenged statements, when read in context, do not comment on the weight of Detective Robles's testimony, express approval for the State's arguments, or comment on or diminish the credibility of Castillo's theory of defense. They are therefore not comments on the weight of the

39

evidence.

Because the trial court's comments were not objectionable, the state habeas court reasonably determined that Ortiz's failure to object was not deficient performance. Castillo has not shown by clear and convincing evidence that the state habeas court's decision was either contrary to clearly established federal law or an objectively unreasonable application of that law. Castillo is not entitled to federal habeas relief on this claim.

### 7. Ineffective Assistance During Closing Arguments (Claims 12, 13)

In claims twelve and thirteen, Castillo alleges that Ortiz provided ineffective assistance by failing to object and move for a mistrial when the State relied on Murillo's allegedly inadmissible testimony during its closing argument. (Dkt. 10, pp. 14-15). Castillo alleges that he was prejudiced because when the testimony is not considered, the State's evidence was insufficient to support a conviction. (*Id.* at 15).

Ortiz responded to these claims in his affidavit, stating that Murillo's testimony was admitted during the trial, the prosecutor's argument was therefore proper, and that he did "not feel the need to object to legally admissible argument." (Dkt. 18-30, pp. 15-16). After considering Castillo's claims, the State's response, Ortiz's affidavit, and the record of the trial, the state habeas trial court found as

follows:

> 25. In his twelfth and thirteenth grounds for relief, the applicant claims counsel was ineffective for failing to object to the prosecutor's statements during closing argument referencing Murillo's testimony as complained of in grounds 5-9. *See Writ Application.*
>
> 26. The Court finds that counsel intentionally allowed and elicited the testimony in order to support his defense theory that the applicant never agreed to participate in the robbery. *See Affidavit of Jimmy Ortiz.* Therefore, the Court finds that counsel was not ineffective for failing to object to the State referencing evidence that had been admitted during the trial.

(*Id.* at 22-23). The state habeas trial court applied the *Strickland* analysis to these facts and concluded that Castillo had failed to show either that Ortiz's performance was deficient or that Castillo had been prejudiced by any alleged deficiency. (*Id.* at 23). The Court of Criminal Appeals denied relief based on these findings and its own independent review of the record. (Dkt. 18-33).

The trial record supports the state habeas court's finding that the State's closing argument was not improper. The purpose of closing argument is to aid the jury in analyzing the evidence presented at trial so that it can arrive at a just and reasonable conclusion based on that evidence alone. *See Campbell v. State,* 610 S.W.2d 754, 756 (Tex. Crim. App. [Panel Op.] 1980). Counsel must "confine their arguments to the record" and may not reference "facts that are neither in evidence nor inferable from the evidence." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *see also Washington v. State*, 16 S.W.3d 70, 73 (Tex. App.—Houston

41

[1st Dist.] 2000, pet. ref'd) ("The State must confine its jury argument concerning the defendant's guilt to statements based upon properly admitted evidence."). But counsel may reference all "properly admitted evidence and any reasonable inferences or conclusions that can be drawn" from the evidence presented at trial. *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008).

In Texas, proper "jury argument must fall within one of the following categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement." *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990) (en banc)). To constitute error, counsel's argument must be extreme or manifestly improper or inject new and harmful facts into evidence. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

The record in this case shows that Ortiz did not object to Murillo's testimony because he believed that the testimony supported the theory of defense. Once Murillo's testimony was admitted in evidence, the prosecutor could properly rely on that evidence in closing arguments. The trial record shows that the prosecutor summarized the admitted evidence and did not inject new and harmful facts. Because the prosecutor's argument was properly confined to the evidence actually admitted at trial, Ortiz had no legitimate basis to object to it. And counsel is not ineffective for failing to make legally frivolous objections. *See Clark v. Collins*, 19

42

F.3d 959, 964 (5th Cir. 1994).

Deferring to the state habeas court's factual findings, as this Court must, the Court finds that the state habeas court properly applied the *Strickland* analysis to the facts it found credible. Castillo has not directed this Court's attention to clear and convincing evidence that the state habeas court's factual findings were unreasonable in light of the evidence, nor has he shown that the state habeas court's application of the *Strickland* standard to those facts was objectively unreasonable. Castillo has therefore failed to carry his burden of proof, and he is not entitled to federal habeas relief on these claims.

### 8.   Ineffective Assistance for Failing to Object to the State's Comments on Witness Credibility (Claims 14, 15, 16, 17)

In his next series of claims, Castillo alleges that Ortiz provided ineffective assistance of counsel when he failed to object and move for a mistrial after the State commented in closing arguments on the veracity of the trial testimony of Castillo's wife, witness Ruben Ayala, accomplice Deleon, and the store clerk. (Dkt. 10, pp. 15-18). Castillo alleges that the prosecutor argued in closing that Castillo's wife lied on the stand and argued that Ayala, Deleon, and the store clerk provided credible testimony. (*Id.*). Castillo alleges that he was prejudiced by Ortiz's failure to object because it "allowed the State to do whatever it needed to obtain a conviction." (*Id.* at 16).

Ortiz responded to these claims in his affidavit, as follows:

> In grounds 14-17 the applicant claims counsel was ineffective for failing to object during closing argument when the State commented on the veracity of the witness's testimony. During closing argument the State identified inconsistencies in Marta Cordova's testimony, summarized Ruben Ayala's part in the trial and rebutted any inferences that he was lying, recounted the evidence and pointed out how it was consistent with Mark Deleon's testimony, and pointed to the lack of bias in the store clerk's testimony. All of these statements were based on the evidence presented at trial and were not based on the prosecutor's personal opinion. As stated above, either party may comment during closing argument on evidence that has been admitted during the trial. Counsel does not feel the need to object to legally admissible argument.

(Dkt. 18-30, p. 16). After considering Castillo's claims, Ortiz's affidavit testimony, and the trial record, the state habeas trial court found the following:

> 27. In his fourteenth through seventeenth grounds for relief the applicant claims counsel was ineffective for failing to object during closing argument when the State commented on the veracity of the witnesses' testimony. *See Writ Application.* The Court finds based on the credible affidavit of Ortiz, that the State was not commenting on the veracity of the witnesses' testimony, but rather was making arguments based on the evidence that had been admitted at trial. *See Affidavit of Jimmy Ortiz.*

> 28. The Court finds that the applicant has failed to show that the State's arguments were improper and fails to show that, had counsel objected the trial court would have errored in overruling the objection.

(*Id.* at 23). The state habeas trial court considered Castillo's claim, reviewed the trial record, applied the *Strickland* analysis to the facts, and concluded that Castillo had failed to show either that Ortiz's performance was deficient or that Castillo had

been prejudiced by any alleged deficiency. (*Id.*). The Court of Criminal Appeals denied relief based on these findings and its own independent review of the record. (Dkt. 18-33).

This Court's independent review of the trial record shows that the state habeas court's factual findings are supported by the record. As Castillo correctly notes, a prosecutor may not express his or her personal opinion of the credibility of a witness. *See Menefee v. State,* 614 S.W.2d 167, 168 (Tex. Crim. App. 1981) (concluding that the prosecutor's statement regarding a State witness that he had never "seen anybody that I thought was any more honest than she is" was an improper expression of the prosecutor's opinion of the witness's credibility); *see also Robillard v. State,* 641 S.W.2d 910, 912 (Tex. Crim. App. 1982) (finding that the prosecutor improperly bolstered the credibility of a written statement by asserting his personal belief in its veracity). But a prosecutor may offer his or her opinion regarding a witness's credibility if that opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony. *See McKay v. State,* 707 S.W.2d 23, 37 (Tex. Crim. App. 1985). Therefore, if a prosecutor's comment about a witness's credibility or veracity is based on an analysis of the evidence and the reasonable deductions therefrom, the comment is not improper. *See Robbins v. State*, 667 S.W.2d 318, 322–23 (Tex. App.—El Paso 1984, pet. ref'd) (citing *Collins v. State,* 548 S.W.2d 368 (Tex. Crim. App. 1976));

*see also Hinojosa v. State,* 433 S.W.3d 742, 763 (Tex. App.—San Antonio 2014, pet. ref'd) (proper jury argument may include comments on the truthfulness of a witness's testimony so long as the argument is based on the evidence presented and reasonable deductions from such evidence).

The prosecutor at Castillo's trial did not offer her personal opinion of the credibility of Castillo's wife, Ayala, Deleon, or the store clerk. Instead, the prosecutor summarized the witnesses' testimony, discussed the ways in which that testimony was either supported or refuted by other evidence in the case, and suggested that the consistencies and inconsistencies made certain testimony more credible than other testimony. The prosecutor did not go outside the record in making her arguments, nor did she inject any new facts into the case. Instead, her argument was a proper summary of the evidence and the reasonable deductions therefrom. Because the prosecutor's arguments were not improper, Ortiz's failure to object did not constitute ineffective assistance. *See Clark*, 19 F.3d at 964 (counsel is not ineffective for failing to make legally frivolous objections).

The Court finds that the state habeas court properly applied the *Strickland* analysis to the facts it found credible. Castillo has not directed this Court's attention to clear and convincing evidence that the state habeas court's factual findings were unreasonable in light of the record of trial, nor has he shown that the state habeas court's application of the *Strickland* standard to those facts was objectively

unreasonable.  Castillo has therefore failed to carry his burden of proof, and he is

not entitled to federal habeas relief on these claims.

### 9.    Ineffective Assistance in Jury Instructions (Claim 18)

In claim eighteen, Castillo alleges that Ortiz provided ineffective assistance

either by requesting that an instruction on aggravated robbery be included in the

jury charge or by failing to object to its inclusion and then arguing for a verdict on

that charge.  (Dkt. 10, p. 18).  He alleges that the charge on the lesser offense

conflicted with his theory of defense and that he was prejudiced because the charge

on that offense made a mockery of his defense.  (*Id.* at 18-19).

Ortiz responded to this claim in his affidavit as follows:

> In every case where a lesser-included offense is a possibility, it is
> counsel's usual practice to discuss the pros and cons of having the
> lesser-included offense included in the jury charge.  In this case,
> counsel discussed the issues with the applicant and the applicant agreed
> to include the lesser-included offense of aggravated robbery instead of
> an all or nothing approach.

(Dkt. 18-30, p. 16).  The state habeas trial court reviewed Castillo's claim, the

State's response, Ortiz's affidavit, and the trial record as a whole and found as

follows:

> 29. In his eighteenth ground for relief, the applicant claims that counsel
> was ineffective for including the lesser-included offense of aggravated
> robbery into the jury charge. *See Writ Application.*  The Court finds,
> based on the credible affidavit of Ortiz, that counsel discussed the pros
> and cons of having the lesser-included offense in the jury charge and

the applicant agreed he wanted the lesser included in the charge.

(*Id.* at 23). The state habeas trial court applied the *Strickland* analysis to these facts and concluded that Castillo had failed to show either that Ortiz's performance was deficient or that Castillo had been prejudiced by any alleged deficiency. (*Id.*). The Court of Criminal Appeals denied relief based on these findings and its own independent review of the record. (Dkt 18-33).

This Court's independent review shows that the state habeas court's factual findings are supported by the record of the proceedings. The State presented testimony and evidence tending to show that Castillo was involved in the robbery and shooting. Ortiz directed the jury's attention to conflicts and inconsistencies in that testimony that could support a verdict of not guilty. In the alternative, he argued that even if the jury found that Castillo was present at the robbery, he was not involved in the shooting and should not be convicted of capital murder. Ortiz states in his affidavit that he made a conscious decision, after consultation with Castillo, to include aggravated robbery in the jury charge. While Ortiz could have proceeded under an all-or-nothing trial strategy, he did not believe that to be a sound strategy in Castillo's case, and he secured Castillo's agreement to this strategy before trial. Such a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton*, 343 F.3d at 752-

48

53. The state habeas court found that this strategy was not ill-chosen, and it denied relief on that basis.

The Court finds that the state habeas court properly applied the *Strickland* analysis to the facts it found credible, and its decision was neither contrary to clearly established federal law nor an objectively unreasonable application of that law. Castillo has not pointed to any clear and convincing evidence that Ortiz's strategy resulted in a trial that was patently unfair trial or whose result was obviously unreliable. Castillo has not carried his burden of proof, and he is not entitled to federal habeas relief on this claim.

### 10. Ineffective Assistance Based on Co-Counsel's Mental Defect (Claim 19)

In his nineteenth claim, Castillo alleges that he received ineffective assistance from co-defense counsel, Eddie Cortéz. (Dkt. 10, pp. 19-20). Castillo alleges that Cortéz "must have suffered from a mental or psychological defect during trial" because he initially did not recall representing Castillo when Castillo approached him two years after trial seeking certain trial materials. (*Id.* at 19). Castillo alleges that he was prejudiced by Cortéz's mental defect as evidenced by "the cumulative effect of counsel's errors." (*Id.* at 20). However, Castillo does not identify any specific error that Cortéz made, nor does he explain how he was prejudiced by Cortéz's allegedly deficient performance.

Cortéz responded to this claim by affidavit, stating:

My name is EDUARDO CORTÉS, and I am over the age of 18 and capable of making this Affidavit.   Under penalty of perjury I declare the following:

Jose Adolpho Castillo was tried for Capital Murder in August of 2015.  He was found guilty by a jury on August 28th, 2015.

His Attorney of Record was Mr. Jimmy Ortiz, TBN 24003888, who was appointed by the Court to represent him in August of 2013. Mr. Ortiz was Lead Counsel at the trial of Mr. Castillo.

At no point prior to trial did I represent Mr. Castillo.

Mr. Castillo contends that he was "denied effective assistance of counsel . . . when counsel suffered from a mental or psychological defect during the trial."  In support thereof, Mr. Castillo references a letter I mailed to him in July of 2017.  In that letter explained that he had the wrong lawyer.  That Jimmy Ortiz was his Attorney of Record and that he should direct his inquiry to him.

I have tried over 70 Jury Trials, including three Murders.  This was a case where I only assisted as Trial Counsel.  It was not until notification of this writ by the District Attorney's Office that I was able to recollect the case.  Once briefed, I was able to recall I assisted in voir dire and the cross-examination of one witness: the medical examiner. Nothing stuck out as to the jury selection and the strikes, but the cross of the doctor was memorable because of the Assistant District Attorney's reaction to the line of questioning.

It was a difficult case but the medical examiner's report showed that the bullets did not pass directly through any major organs of the decedent: not the liver, not the kidneys, lungs or heart.  They did puncture some vessels in the decedent's back which ultimately caused the death, but the strategy at the time was to see if the emergency room doctors had made any mistakes.  In other words, were the injuries survivable and was his death due to medical error?  According to the medical examiner they were not and it was not.  The very suggestion

drew an audible sigh from the District Attorney in charge of the case.
Clearly she did not appreciate the line of questioning but the Defense
did not have a lot to work with and it was the only line of attack. I was
essentially grasping at straws.

At no point during the trial did I lose consciousness, sensibilities
or even my train of thought. It was a clear and concise cross-
examination. I never suffered from any mental disease or defect during
this trial. The only thing I suffered was a memory lapse when I was
asked about it two years later.

(Dkt. 18-29, pp. 21-22). The state habeas trial court did not make any findings of

fact on this issue, but the Court of Criminal Appeals denied relief on this claim

based on its independent review of the record. (Dkt. 18-33).

Because the state habeas court made no explicit findings of fact or

conclusions of law on this claim, this Court "must determine what arguments or

theories supported or, as here, could have supported, the state court's decision; and

then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision of this

Court." *Richter*, 562 U.S. at 102. The state habeas court's ultimate legal decision

on this claim was that Cortéz did not provide ineffective assistance during the

portions of the trial in which he represented Castillo. In reaching this result, the

state habeas court could reasonably have determined that Cortéz did not suffer from

any mental or psychological defect and that Castillo was not prejudiced by any

action taken by Cortéz while representing him. Either finding is supported by the

51

record and supports the state habeas court's denial of relief.

In his petition and responses to the motion for summary judgment, Castillo does not address the substance of Cortéz's affidavit, but instead argues that Cortéz's statements that the defense "did not have a lot to work with" and that he was "grasping at straws" demonstrate that Castillo was denied a proper defense. But these statements appear to relate solely to Cortéz's examination of the medical examiner—not to Castillo's defense as a whole. More importantly, Castillo has not pointed to any clear and convincing evidence that Cortéz had either a mental or psychological defect that resulted in any error during trial nor does he demonstrate that he was prejudiced.

Having failed to identify any alleged error made by Cortéz or to show that any prejudice resulted from Cortéz's actions, Castillo has not carried his burden to show that the state habeas court's application of the *Strickland* standard to this claim was objectively unreasonable. Castillo is not entitled to federal habeas relief on this claim.

### 11.   Cumulative Error
### (Claim 20)

In claim twenty, Castillo alleges that all of Ortiz's errors, considered cumulatively, resulted in a trial during which Ortiz "utterly failed to defend against the charges" such that Castillo's "trial was the functional equivalent of a guilty

plea." (Dkt. 10, p. 20). Castillo alleges that prejudice should be presumed because there was "a complete denial of counsel." (*Id.*). The Court of Criminal Appeals denied relief on this claim based on its independent review of the record. (Dkt. 18-33).

As with claim nineteen, the state habeas court made no explicit findings of fact or conclusions of law on this claim. Therefore, this Court must determine what arguments or theories could have supported the state habeas court's decision and whether fairminded jurists could disagree that those arguments or theories are inconsistent with a prior Supreme Court decision. *See Richter*, 562 U.S. at 102. The state habeas court's ultimate legal decision on this claim was that neither Ortiz nor Cortéz provided ineffective assistance during the trial.

To the extent that Castillo bases this claim on an allegation that Ortiz and Cortéz provided ineffective assistance because their defense strategy did not work, the state habeas court could reasonably have denied relief because the fact that a defense strategy does not work out as well as counsel had hoped is not evidence that counsel was incompetent. *See Richter*, 562 U.S. at 109. To the extent that Castillo bases this claim on an allegation that Ortiz made multiple errors that cumulatively resulted in prejudice, the state habeas court could reasonably have denied relief because Castillo has not shown error.

"[F]ederal habeas corpus relief may only be granted for cumulative errors in

the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)); *see also Turner v. Quarterman,* 481 F.3d 292, 301 (5th Cir. 2007). If no single error rises to the level of constitutional dimension, there can be no cumulative error because there is "nothing to cumulate." *Turner*, 481 F.3d at 301.

As explained above with respect to each of Castillo's claims, he did not establish that any single error rose to the level of constitutional dimension. Without a showing of such error, there is no constitutional error to cumulate for purposes of the cumulative error doctrine. The state habeas court's rejection of Castillo's cumulative error claim was not objectively unreasonable, and Castillo is not entitled to federal habeas relief on this claim.

### B.   Ineffective Assistance of Appellate Counsel Claim

In his final claim, Castillo alleges that appellate counsel provided ineffective assistance by failing to raise a claim of prosecutorial misconduct on direct appeal. (Dkt. 10, pp. 20-21). Castillo alleges that the prosecutors introduced inadmissible evidence throughout his trial and presented improper jury arguments. (*Id.* at 21). He contends that a claim based on prosecutorial misconduct would have been

stronger than the issue actually raised and would have resulted in a different outcome on appeal. (*Id.*).

Like a claim for ineffective assistance of trial counsel, a claim of ineffective assistance of appellate counsel is governed by the test set out in *Strickland*, which requires the petitioner to establish both constitutionally deficient performance and actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal). To establish deficient performance, the petitioner must show that appellate counsel "was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover non-frivolous issues" and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (cleaned up). A reasonable appellate attorney has an obligation to research the relevant facts and law and make informed decisions as to whether any identified issues will, or will not, prove fruitful. *See Strickland*, 466 U.S. at 690-91. But the Constitution does not require an appellate attorney to advance every conceivable argument, regardless of merit. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985). To establish prejudice, a habeas petitioner must show that there is a "reasonable probability" that, but for appellate counsel's deficient performance, "he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285. In essence, the petitioner must show that appellate counsel's "deficient performance led to a fundamentally unfair and unreliable result." *United States v. Dovalina*, 262

F.3d 472, 475 (5th Cir. 2001) (citing *Goodwin v. Johnson*, 132 F.3d 162, 176 (5th Cir. 1997)).

As with the prior two claims, the state habeas court made no explicit findings of fact or conclusions of law on this claim. Therefore, this Court must determine what arguments or theories could have supported the state habeas court's decision and whether fairminded jurists could disagree that those arguments or theories are inconsistent with a prior Supreme Court decision. *See Richter*, 562 U.S. at 102.

The state habeas court's ultimate legal decision on this claim was that appellate counsel was not ineffective for failing to raise and argue a claim based on unpreserved prosecutorial misconduct. In Texas, a defendant is entitled to reversal based on unpreserved claims of prosecutorial misconduct only when "there is serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process . . . resulting in deprivation of fundamental fairness and due process of law." *Bautista v. State*, 363 S.W.3d 259, 263 (Tex. App.—San Antonio 2012, no pet.) (quoting *Jimenez v. State*, 298 S.W.3d 203, 214 (Tex. App.—San Antonio 2009, pet. ref'd)); *see also Berger v. United States*, 295 U.S. 78, 84, 88, (1935). Reversal on appeal is proper only if the prosecutor's conduct is so harmful that no action that could have been taken at trial would have been sufficient to remedy the error. *See Bautista*, 363 S.W.3d at 263. Therefore, simply asking an improper question will not generally constitute reversible error because such an

error could be cured or rendered harmless through withdrawal of the question or an instruction to the jury to disregard the question or response. *See Rogers v. State*, 725 S.W.2d 350, 359 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (citing *Brown v. State*, 692 S.W.2d 497 (Tex. Crim. App. 1985)).

In this case, the state habeas court could reasonably have determined that the prosecutor's questions that elicited hearsay responses were not improper. Alternatively, the state habeas court could reasonably have determined that even if the prosecutor's questions were improper, they did not rise to the level of prosecutorial misconduct sufficient to merit reversal of Castillo's conviction. Castillo has not shown that the state habeas court's application of the *Strickland* standard to the facts surrounding his appeal was objectively unreasonable. He has therefore failed to carry his burden of proof, and he is not entitled to federal habeas relief on this claim.

## IV.   **CERTIFICATE OF APPEALABILITY**

Habeas corpus actions under § 2254 require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. To be entitled to a certificate of appealability, the petitioner must make "a substantial showing of the denial of a constitutional right,"

28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 276 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   The petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484).   A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

Castillo has not shown that reasonable jurists would find the Court's resolution of the constitutional issues raised in his petition debatable or wrong. Therefore, this Court will not issue a certificate of appealability.

## V.   **CONCLUSION**

For the reasons explained above, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Dkt. 17) is **GRANTED**.

2. Castillo's petition for a writ of habeas corpus, (Dkt. 1), and amended petition for writ of habeas corpus, (Dkt. 10), are **DENIED**, and this case is dismissed with prejudice.

3. Any pending motions are **DENIED** as moot.

4. A certificate of appealability shall not issue.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas on _____, 2023.


_____
DAVID HITTNER
UNITED STATES DISTRICT JUDGE